PROVOSTY, J.
The accused was convicted of murder without capital punishment, and was sentenced to the penitentiary for life; and he has appealed.
[1, 2] The name of G. H. Joffrion, seventh ward, appearing incorrectly in the General venire list as J. H. Joffrion, seventh ward, the jury commissioners, when they came to it in drawing the venire for the term of court at which the accused was tried, corrected it; and, as thus corrected, the name appeared in the venire list. There had at one time been a J. H. Joffrion living in the seventh ward, but he had removed to another state more than 10 years before the general venire list was made; and hence the jury commissioners could not possibly have intended him when they made their list, but, to a certainty, intended G. H. Joffrion. Claiming that the venire list served upon him should have conformed with the general venire list and contained the name of J. I-I. Joffrion, and not that of G. H. Joffrion, the accused, on that sole ground, moved for a continuance. In the first place, if that ground had any merit, the proper motion would have been to quash the venire; but, waiving that, the ground is without merit. Such slight imperfections as this will inevitably occur, and can always be corrected. State v. Ballerio, 11 La. Ann. 82; State v. Turner, 25 La. Ann. 574.
[3] The next bill of exceptions reads, as follows:
“Be it remembered that on' Saturday, the 4th day of October, 1913, the day this case was fixed for trial, and on the day the case was taken up for trial during the impaneling of the jury, and after 11 jurors had been accepted by the state and the defendant, the juror Francis Williams having been examined by the district attorney and tendered to counsel for defendant to be further examined on his voir dire, and during the examination of said juror on his voir dire, he was asked by counsel for defendant as to his understanding of circumstantial evidence, to which question the district attorney objected and stated to counsel for defendant that ‘he (the accused) has no case,’ to which remark of the district attorney, made in the *831 presence of the 11 jurors who had already .been .accepted, counsel for defendant then and there reserved a bill of exceptions, and requested the ■court to charge the jury to disregard this statement of the district attorney, which request .the presiding judge declined to grant, and to which refusal counsel for defendant then and there reserved a bill of exceptions, and the ■clerk of court, by direction of the presiding .judge at the request of counsel for defendant, took down the facts upon which the bill of exceptions to the remark of the district attorney was based, which statement as taken down by the clerk of court, is hereto annexed and.hereof made a part, and, having submitted this bill of exceptions to the district attorney, now hands it to the court to be signed.
“By the District Attorney:
" “The remark which counsel objected to, and to which he reserved his bill, was made by me while the juror, Francis Williams, was being •examined on his voir dire, as stated by counsel. But counsel has designedly selected from the language used by me on the occasion referred to, this one isolated remark: ‘He (the accused) has no case’ upon which to .base his bill. He fails to state the idea which I meant to convey by ■said remark, as well as the explanation then ■and there offered by me in reference thereto.
“The remark objected to was made under the following circumstances:
“THe case on trial was one depending entirely <on circumstantial evidence.
“The juror Francis Williams had been examined by me on his voir dire, and had been tendered as a juror. I had not asked him if he would convict on circumstantial evidence because I had known him intimately for several .years; knew him to be a man of intelligence ■and good judgment, and considered such a question, therefore, unnecessary.
“Counsel for defendant then proceeded to •further examine the juror on his voir dire. During the course of this examination, counsel propounded several questions to the juror touching his estimate of circumstantial evidence. At this point I interposed an objection to this line ■of examination, on the ground that it could be no possible concern of defendant’s whether the juror would or would not convict on circumstantial evidence; that the state was the only party ■concerned as to the juror’s attitude on the question.
“It was while I was thus addressing the court in support of my objection that counsel interrupted me by stating, in substance, that he had a right to try his case in his own way. I then remarked (still addressing myself to the court) -that he (meaning the accused) had no case; that the case was that of the state of Louisiana v. The Accused, and not that of the Accused v. the State of Louisiana. Counsel then excepted to this remark, despite my explanation to the ■court, in the presence of the jurors whom had already been accepted, that I meant to convey uo other idea save the case was the state’s .case, and that the burden rested upon the state to prove its case. I further stated that I did not mean to insinuate that the accused had no defense, and I thereupon remarked to counsel that.it was unfair of him to attempt to give my language such a construction.'
“[Signed] ■ . J. H. Morrison, Dist. Atty.
“The statement made by the District Attorney is a correct statement of what occurred.
“[Signed] C. K. Schwing, Judge.”
The clerk’s statement of facts thus said to be annexed, reads, as follows:
“State v. Joe Campbell, No. 2010.
“During the examination of the jurors on their voir dire, the district attorney objected to counsel for the accused asking the juror questions as to his understanding of circumstantial evidence, and stated to counsel for accused that ‘he (the accused) had no case.’ ”
There is no necessary conflict between the facts as stated by the judge and the district attorney in the bill and as stated by the clerk. The one statement is full; the other is a truncated statement, with omission of what went before and what followed. As contained in this full statement, the remark was harmless.
[4, 5] The next bill of exceptions reads, as follows:
“Be it remembered that on the trial of this case on the 4th day of October, 1913, in the said district court, Adam Joyce, a witness sworn on behalf of the state, being on the witness stand, and being under cross-examination, was asked the following question by counsel for defendant: ‘What did you tell the grand jury when you were a witness before them?’ — to which question the district attorney objected, and was sustained by the court, to which ruling and decision of the court the defendant by his counsel then and there excepted, and reserved this bill of exceptions, and now tenders this bill of exceptions, and prays that the same may be signed .by the judge of this court after having been submitted to the district attorney.”
It was error not to require the question to be answered; but the bill fails entirely to advise this court what bearing the testimony of the witness had upon the case; and, in the absence of that information, this court is not in a position to say that the ruling caused injury, and unless injury is shown, the verdict cannot be set aside. Marr, Crim. Juris. §§ 465, 485.
*833 [6, 7] After the jury had retired for consultation, they were furnished with “a small half pint flask of cocktail, not full,” and, they were given beer with their meals, less than one pint to each man, and during the night they played a game of cards. All this was made ground for an application for new trial. It has been held by this court that furnishing alcoholic liquors to a jury in moderation, and where none of the jury was shown to have been at all deranged by it, will not vitiate the verdict. State v. Dorsey, 40 La. Ann. 740, 5 South. 26; State v. Bellow, 42 La. Ann. 586, 7 South. 782; State v. Nelson, 32 La. Ann. 846. And where a jury is locked up for the night, as in this case, we can see no harm in their whiling away a part of the time in an innocent game of cards.
Judgment affirmed.