O’NIELL, Chief Justice
 

 (dissenting).
 

 The defendant was tried for. murder, found guilty without capital punishment, and sentenced to life imprisonment. In his appeal he complains that by an erroneous ruling of the judge he was deprived of one of the twelve peremptory challenges which he was entitled to by law. In the selection of the jury he challenged for cause a prospective juror named Hogan, because, on his voir dire examination, Hogan disclosed that he had such a fixed opinion of the guilt of the defendant that he could not give him a fair or impartial trial. The judge, erroneously, overruled the challenge of the juror for cause; and the defendant was obliged to challenge him peremptorily. The minutes of the court show — and it is not disputed — that the State and the defendant each challenged peremptorily twelve prospective jurors during the impaneling of the jury. On the clerk’s list it appears that the defendant challenged peremptorily nine jurors before and two more after he challenged Hogan.
 

 The members of this court- all agree that Hogan was disqualified for service as a juror and that the judge therefore committed an error in overruling the defendant’s challenge for cause, and in thus compelling him to use a peremptory challenge on Hogan i.n order to prevent his serving on the jury. It is so admitted in the majority opinion in this case. But the four justices
 
 *501
 
 who subscribe to the majority opinion maintain that the defendant has no right to complain of the erroneous ruling — overruling his challenge for cause — because the defendant’s bill of exception fails to show that he was compelled eventually, in consequence of the erroneous ruling, to accept an obnoxious juror. The three other members of the court — including the writer of this dissenting opinion — maintain that, inasmuch as the erroneous ruling compelled the defendant to use one of his peremptory challenges on a disqualified juror, the effect was to deprive the defendant of one of the twelve peremptory challenges which he was entitled to by law, and that the ruling was therefore “a substantial violation of a constitutional or statutory right”.
 

 There is in the Bill of Rights in the Constitution of Louisiana, in Section 10 of Article I, this guaranty: “In all criminal prosecutions, the accused * * * when tried by jury shall have the right to challenge jurors peremptorily, the number of challenges to be fixed by law”. That guaranty was not included in the Bill of Rights in the Constitution of 1868 or in any previous Constitution of Louisiana. It appeared first in Article 8 in the Bill of Rights in the Constitution of 1879, and was retained in Article 10 in the Bill of Rights in the Constitution of 1898 and in the Constitution of 1913.
 

 The number of peremptory challenges “fixed by law” was fixed in Section 997 of the Revised Statutes of 1870, and is now fixed in Article 354 of the Code of Criminal Procedure, thus: Each side is entitled to twelve peremptory challenges in a prosecution for a crime for which the penalty is death or necessarily imprisonment at hard labor; and each side is entitled to six peremptory challenges in all other criminal cases tried by a jury.
 

 Therefore, if the defendant in a prosecution for murder — as in this case — is deprived of one of his twelve peremptory challenges, by being compelled by an erroneous ruling of the judge to use a peremptory challenge in order to get rid of a disqualified or incompetent juror, and if the defendant’s peremptory challenges are exhausted in the impaneling of the jury, the erroneous ruling “constitutes a substantial violation of a constitutional or statutory right” — in the words of Article 557 of the Code of Criminal Procedure. It is declared in that article that one of the causes for which alone an appellate court should set aside a verdict and grant a new trial is that the error complained of “constitutes a substantial violation of a constitutional or statutory right.”
 

 In that respect the law was always the same and was not changed at all by the adoption of the Code of Criminal Procedure. In State v. Fourchy, 51 La.Ann. 228, loc. cit. 245, 25 So. 109, loc. cit. 116, it was declared:
 

 “The right to 12 peremptory challenges so conferred [by Sec. 997 of Rev.Stat.] is an absolute one. The deprivation of the exercise of that right carries with it per se, as it does in every other case where the exercise of an absolute statute right has been refused or made unavailable, the nullity of the proceeding in which the refusal has taken place. It is not a question
 
 *502
 
 of injury at all, further than the injury itself of denying the right. The denial of the right is itself the injury. If further and subsequent injury were deemed to be necessary to enter as a factor in the case, such injury would, juris et de jure, be presumed. The proposition here announced is, we think, so elementary as to need no special citation of authority to support it.” [The court, however, did cite several decisions.]
 

 In the case of State v. McCoy, 109 La. 682, 33 So. 730, 731, the rule is stated in the 6th paragraph of the syllabus, thus:
 

 “Where, in a criminal prosecution, a challenge for cause is improperly overruled, and the defendant’s peremptory challenges are exhausted before the jury is obtained, the accused is prejudiced, and the verdict will be set aside, even though it be not shown that any juror objectionable to him was allowed to serve.”
 

 State v. McCoy was cited with approval in State v. Guillory, 146 La. 434, 83 So. 754, and the rule was restated in the 5th paragraph of the syllabus, thus:
 

 “Overruling of defendant’s challenge for cause of proposed juror who had shown himself to be incompetent on his voir dire examination held reversible error, though defendant challenged the proposed juror peremptorily, where defendant was required to use all his peremptory challenges, since to deprive the defendant unlawfully of one of his peremptory challenges allowed by law is as wrong as it would be to compel defendant to accept an incompetent juror when all peremptory challenges are gone.”
 

 That rule stated in State v. McCoy and restated in State v. Guillory was declared to be
 
 “the
 
 established rule”, less than six months ago, in the most recent decision oa the subject, State v. Henry, 197 La. 999, 3 So.2d 104, 111, thus:
 

 “The established rule is that: ‘Where,, in a criminal prosecution, a challenge for cause is improperly overruled, and the-defendant’s peremptory challenges are exhausted before the jury is obtained, the accused is prejudiced, and the verdict will be set aside.’ Syllabus, Paragraph 6, State v. McCoy, supra. See State v. Guillory, supra, Syllabus, Paragraph 5.”
 

 The decision in State v. Henry was-rendered long after the Code of Criminal' Procedure was adopted; it was an unanimous decision; and the writer of the opinion in that case is one of the three dissenting justices in the present case.
 

 It is conceded by the Attorney General and the District Attorney in their brief that before the adoption of the Code of Criminal Procedure all that was necessary to preserve the right of „a defendant to complain of an erroneous ruling, overruling his challenge of a prospective juror for a cause which- is found by this court to be a valid and sufficient cause, was that the defendant should have exhausted his peremptory challenges in the impaneling of the jury; and that it was not necessary that he should show that he was compelled by the erroneous ruling to accept an obnoxious or objectionable juror, or that he-should show that he suffered any further injury than that he was deprived of his constitutional right to have twelve per
 
 *503
 
 •emptory challenges. The Attorney General .and the District Attorney say in their brief that they have examined every case bearing ■on this question, decided by this court 'before the adoption of the Code of Criminal Procedure. And in support of their conclusion as to what was the law on the subject before the adoption of the Code they cite State v. Fourchy, State v. McCoy, State v. Guillory, and Marr’s Criminal Jurisprudence, 2d Ed., Vol. 1, p. 700, Sec. 461. These are the authorities mentioned 'in the majority opinion. The Attorney 'General and the District Attorney then state in their brief:
 

 “This was the law, even though in many cases there were loose expressions by the Supreme Court in various decisions to the effect that the defendant should, in such a •case, show a third thing, namely: that he was forced to accept an obnoxious juror. See Marr’s Criminal Jurisprudence, 2d Ed., Vol. 1, p. 700, Sec. 461; State v. Tibbs, 48 [La.] Ann. 1278 [20 So. 735]; State v. Taylor, 45 [La.] Ann. [1303], 1305 [14 So. 26]; State v. Green, 43 Ann. 402 [9 So. 42] ; State v. Ford, 42 [La.] Ann. [255], 256 [7 So. 696]; State v. Addison, 134 La. 642 [64 So. 497].”
 

 I respectfully submit that it is not at all likely that the members of the commission who drafted Article 353 of the Code of Criminal Procedure — or the members of the Legislature who adopted it — intended thereby to adopt a doctrine which had no better foundation than some “loose expressions” of. this court on the subject, instead of adhering to the doctrine which was well established by the decisions of this court, and which could not be renounced without violating a provision in the Bill of Rights.
 

 Article 353 of the Code of Criminal Procedure — I respectfully submit — is misconstrued in the majority opinion in this case. The article is merely a restatement of the rules which were well established at the time when the Code was adopted — thus:
 

 “353. No defendant can complain of any ruling sustaining or refusing to sustain a challenge for cause, unless his peremptory challenges shall have been exhausted before the completion of the panel; moreover, the erroneous
 
 allowance
 
 of challenges for cause affords the defendant no ground of complaint, unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling is forced to accept an' obnoxious juror.” [The word “allowance” is italicized by me.]
 

 The article is composed of two complete sentences, separated by a semicolon. The first sentence deals with erroneous rulings sustaining a challenge made by the State for cause, and also with erroneous rulings overruling a challenge made by the defendant for cause. The second sentence deals only with the erroneous allowance of challenges for cause by the State; this latter sentence does not refer to the erroneous overruling of challenges made by the defendant for cause. The erroneous sustaining or allowing of challenges for cause has reference, of course, only to challenges made by the State, because, in the very nature of things, the defendant could not have any possible objection to the sustain
 
 *504
 
 ing of a challenge made by him for cause. Likewise, the erroneous overruling of challenges for cause has reference only to challenges made by the defendant, because, in the very nature of things, the defendant could not have any possible objection to the overruling of a challenge made by the State for cause. Therefore, where the lawgiver, in the first sentence in this article, declares that a defendant cannot complain of any ruling sustaining a challenge for cause unless the defendant’s peremptory challenges shall have been exhausted before the completion of the panel, the challenges for cause, referred to, are challenges made by the State for a cause which is not a valid or sufficient cause. And, where the lawgiver, in the same sentence, declares that a defendant cannot complain of the overruling of a challenge for cause unless his peremptory challenges shall have been exhausted before the completion of the panel, the challenges for cause, referred to, are challenges made by the defendant for a cause which is in truth a valid and sufficient cause. The article, of course, deals only with erroneous rulings — sustaining a challenge by the State for a cause which is not a valid or sufficient cause, or refusing to sustain a challenge by the defendant for a cause which is a valid and sufficient cause.
 

 The second or concluding sentence — after the semicolon — in this article of the Code, deals only with “the erroneous allowance of challenges for'cause”. It does not deal with the erroneous overruling of challenges, for cause. Having declared in the first sentence -that the defendant cannot complain of any ruling either sustaining or refusing to sustain p challenge for cause unless his peremptory challenges shall have been exhausted before the completion of the panel, the author of the article then, in the second sentence, declares “moreover” that' the erroneous allowance of challenges for caus'e affords the defendant no ground of complaint unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling is forced to accept an obnoxious juror. The phrase “by such ruling” means by the erroneous al- , lowance of a challenge for cause. That is the only kind of erroneous ruling that is dealt with in that sentence. If the author of this article had intended to declare that a defendant shall not be allowed to complain of an erroneous ruling either sustaining or refusing to sustain a challenge for cause unless — in addition to his having exhausted his peremptory challenges in the impaneling of the jury — the effect of such ruling is to allow the prosecution more peremptory challenges than it is entitled to or unless the defendant by such ruling is forced to accept an obnoxious juror, there would have been no reason for declaring: “moreover, the erroneous allowance of challenges for cause affords the defendant no ground of complaint, unless the effect of such ruling * * * ”, et cetera. If that had been the intention, the phrase “moreover, the erroneous allowance of challenges for cause affords the defendant no ground for complaint” would have been omitted, and the word “and”
 
 *505
 
 would have taken the place of that phrase. The whole article then would have been written as it is construed in the majority-opinion in this case — as it is broken down and reconstructed on the 7th page of the State’s brief. There the proposed reconstruction is printed thus:
 

 “No defendant can complain of any ruling * * * refusing to sustain a challenge for cause * * * unless the defendant by such ruling is compelled to accept an obnoxious juror.”
 

 That is exactly how the article is construed in the majority opinion, in its application to this case. The phrase “unless the defendant by such ruling is forced to accept an obnoxious" juror” is not applicable to this case because the ruling complained of in this case was not an “erroneous allowance of a challenge for cause”; it was the overruling of a challenge by the defendant for a cause which the court now finds was a valid and sufficient cause.
 

 In a supplemental brief for the State, it is suggested to “break this article down and see just what it means and says”, and then the authors of the brief, after breaking down the article, attempt to make it applicable to this case by reconstructing it thus:
 

 “No defendant can complain of any ruling sustaining or refusing to sustain a challenge for cause unless his peremptory challenges shall have been exhausted before the completion of the panel; moreover * * * or unless the defendant by such ruling is forced to accept an obnoxious juror.”
 

 There is no justification for deleting the clause “the erroneous allowance of challenges for cause affords the defendant no ground for complaint unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law”. Unless the court deletes also the next word, “or”, the phrase “or unless the defendant by such ruling is forced to accept an obnoxious juror” will be only an alternative requirement, or a substitute for the requirement that the defendant shall have exhausted his peremptory challenges, in order to preserve his right to complain of an erroneous ruling refusing to sustain his challenge for a cause which is adjudged by this court to be a valid and sufficient cause.
 

 The following decisions are cited in the majority opinion to support the ruling that, even though a defendant has used all of his twelve peremptory challenges- in the impaneling of the jury, he has no right to complain of an erroneous ruling, overruling a challenge of a juror for cause, unless by such ruling the defendant was forced to accept an obnoxious juror, viz.: State v. Creech, 38 La.Ann. 480; State v. Tibbs, 48 La.Ann. 1278, 20 So. 735; State v. Addison, 134 La. 642, 64 So. 497; State v. Joiner, 163 La. 609, 616, 112 So. 503; State v. Messer, 194 La. 238, 253, 193 So. 633; State v. Henry, 197 La. 999, loc. cit. 1019, 3 So.2d 104, loc. cit. 111; and State v. Crawford, 195 La. 428, 196 So. 921.
 

 I have read and studied carefully every decision cited in the majority opinion in this case, and I submit with great respect that none of these decisions gives sup
 
 *506
 
 .port to this majority opinion on the question which we are considering now. The decisions cited are, for the most part, examples of what are rightly called in the State’s brief “loose expressions by the Supreme Court”. I shall proceed, therefore, to analyze every decision cited in the majority opinion on this subject.
 

 In -the first of the cases cited, State v. Creech, the ruling complained of was not that the judge erroneously overruled a challenge for cause, but that he erroneously sustained a challenge by the State for cause. In such a case, of course, it was always the law — and is so declared in the second sentence in Article 353 of the Code of Criminal Procedure — that “the erroneous allowance of challenges for cause affords the defendant no ground of complaint * * * unless the defendant by such ruling is forced to accept an obnoxious juror”. For the defendant to complain of an erroneous ruling of that kind it is not enough that he shall have exhausted his twelve peremptory challenges. But we must remember that the erroneous ruling in the present case did not consist of an erroneous allowance of a challenge for cause. Besides, it is stated in the report of the decision in State v. Creech that the defendant did not exhaust his peremptory challenges “during the whole trial”. The ruling in that case is stated accurately and completely in the syllabus, thus:
 

 “The ruling of a trial judge in
 
 rejecting
 
 a juror under a challenge for cause by the State, affords of itself no legal ground of complaint to the accused. The right of peremptory challenge is a right to reject but not to select.” [Italics mine.]
 

 In the next case cited in the majority opinion, State v. Tibbs, the court cited State v. Creech to support its ruling. In the Tibbs case the complaint was not that the judge erroneously overruled a challenge of a disqualified juror for cause. The prospective juror, A. G. Barrow, had been, selected regularly by the jury commission and summoned on the regular venire for the week, and was in court when, in the impaneling of the jury, a slip of paper bearing the name A. G. Bernard was drawn from the box by the sheriff. It was found that the name A. G. Bernard was intended for A. G. Barrow, who had “answered to his name when the venire was called in court”. The defendant’s counsel objected to the examining of A. G. Barrow on his voir dire, and reserved a bill of exception to the overruling of the objection. The defendant afterwards peremptorily challenged Barrow, and finally exhausted his peremptory challenges in the impaneling of the jury. This court said that the defendant’s bill of exception was “obscurely drawn”; that it was difficult to know from the bill the ground of complaint; that the court “inferred” that the writing of the-name A. G. Bernard instead of A. G. Barrow on the venire list was a clerical error and that the variance in the name was held immaterial by the judge; but that this court could not deal with bills of exception by reaching obj ections by inference. It was in those circumstances that the court quoted from the Creech case that the defendant had not shown that he “had been compelled
 
 *507
 
 to accept an obnoxious juror”. The quotation from the Tibbs case, in the majority opinion in the present case, therefore, is not appropriate. In the Tibbs case the quotation from the Creech case is an exemplification of those unnecessary and unfortunate expressions which are so aptly called “loose expressions”, in the State’s brief in this case.
 

 In the next case cited, State v. Addison, this court held that the district judge was right in his ruling that the two prospective jurors, McAlpin and Millican, were qualified to serve as jurors in the case; and that the judge was right therefore in overruling the defendant’s challenge of McAlpin and Millican for cause. The court observed also that the statement in the defendant’s counsel’s brief that his peremptory challenges were exhausted in the impaneling of the jury “should have been in the bill of exception” [134 La. 642, 64 So. 499]. The subsequent statement by the court, therefore, that the court did not find any intimation that the defendant needed any peremptory challenges after they were exhausted, was not a part of the decision, and is also one of those “loose expressions” referred to in the State’s brief. In Marr’s Criminal Jurisprudence, 2d Ed., Vol. 1, p. 701, Sec. 461, the comment on State v. Addison, in the footnote, is this:
 

 “134 La. 642, 64 So. 497. In this case the bill [of exception] did not show that the [peremptory] challenges had been exhausted, and the jurors objected to did not sit in the case, and the judge’s refusal to allow the challenges for cause was upheld.”
 

 At the end' of the quotation from the Addison case, in the majority opinion in the present case, the case of State v. Woods, 112 La. 617, 622, 623, 36 So. 626, 628, is cited. In that case, all that the court said on the subject which we are now considering was this:
 

 “Bills Nos. 8, 9, 10, 11 and 12 set forth objections to certain jurors, which were overruled by the court, but it does not appear from the recitals of said bills or from the record that the objectionable jurors served on the jury which tried the case. Accused, therefore, shows no injury.”
 

 In the syllabus in State v. Woods the court announced the doctrine which I stand for in this dissenting opinion, thus:
 

 "Bills of exception, where jurors are challenged for cause and the challenge [is] overruled, should show that such jurors were accepted and sworn, or were challenged peremptorily by accused, who exhausted his peremptory challenges before a full jury was obtained.”
 

 There is no intimation in that case that the defendant is required to show that he was compelled to accept an obnoxious juror, in order to obtain relief from an erroneous ruling like the one in this case.
 

 In the next case cited in the majority opinion, State v. Joiner, 163 La. 609, 610, loc. cit. 616, 617, 112 So. 503, loc. cit. 505, 506, the court held that the juror, Robertson, whom the defendant challenged unsuccessfully for cause, was disqualified, and that the district judge therefore committed an error in overruling the challenge and allowing Robertson to serve on the jury.
 
 *508
 
 The tase of State v. Addison was cited as a case in which this court had held that a prospective juror, Millican, whose relation to the case was somewhat similar to the relation of the juror, Robertson, to the Joiner case, was in truth a qualified juror. It was recognized, therefore, in the Joiner case, that this court had held that the prospective juror, Millican, in the Addison case, was a qualified juror. In reconciling the ruling that Millican was a qualified juror in the Addison case, with the ruling that Robertson was not a qualified juror in the Joiner case, the court said in the latter case:
 

 “While the court held the juror [Millican] to be competent [in the Addison case], it evidently was not entirely satisfied with the correctness of its ruling, for it finally said, in its opinion, that, although the defendant eventually exhausted his peremptory challenges, it found no intimation anywhere that he needed any, after they were exhausted; ‘hence there is no disclosure of injury resulting from the ruling, * * * even if-that ruling were found to have been erroneous, and we are not prepared to say that such error would call for the setting aside of the conviction’.”
 

 The analysis which is given in the Joiner case, of the ruling which was made in the Addison case, shows that neither of these cases gives any support to the majority opinion on the subject which we are considering now in thei present case.
 

 The next case cited in the majority opinion in this case is State v. Messer, 194 La. 238, loc. cit. 253, 193 So. 633, loc. cit. 638, where the defendant complained of the judge’s having overruled two challenges for cause, and this court held that the rulings, overruling the challenges for cause, were correct, thus:
 

 “The ruling of the trial judge refusing to sustain the challenge for cause by defendant of the two jurors in this case is clearly correct.”
 

 There was then no reason whatever for the court to go further and say that the defendant’s bill of exception did not show “that he was forced to accept an obnoxious juror, as he is required to show under the decisions of this court.” In support whereof the court cited State v. Addison, State v. Creech and State v. Woods; none of which cases was appropriate.
 

 An astonishing feature of the opinion in State v. Messer is that the court quoted the reasons given in the per curiam of the district judge for overruling the defendant’s challenge of the two jurors for cause;, and one of the reasons- given was that the defendant had twelve peremptory challenges •and therefore, according to Article 353 of the -Code of Criminal Procedure, could not complain of the overruling- of the challenges for cause. That part of the quotation from the per curiam (loc. cit. 252 of 194 La., loc. cit. 637 of 193 So.) reads thus:
 

 “ ‘The Court refused to sustain the challenge for cause by the defendant, on the ground first, that the defendant had twelve (12) peremptory challenges left at the time of the challenge, and on the further ground that the jurors qualified- themselves for jury service in that on their voir dire exam-
 
 *509
 
 ination, they stated that they knew nothing about the facts or the evidence in the case.
 

 “ ‘The Court further based its ruling on Article 353 of the Code of Criminal Procedure, which provides that the defendant cannot complain of any ruling sustaining or refusing to sustain a challenge for cause unless his peremptory challenges have been exhausted, or unless defendant, by such ruling, would be forced to accept an obnoxious juror. After the ruling of the Court, the defendant challenged the two jurors peremptorily.’ ”
 

 Immediately following that paragraph are the two paragraphs which are quoted in the majority opinion in the present case, and which amount to nothing when considered in connection with the fact that the ruling refusing to sustain the defendant’s challenge of the two jurors for cause was a correct ruling. I made that fact plain enough in my concurring opinion (194 La. 267, 268, and 193 So. 642), thus:
 

 “Referring to bill of exception No. 2, it is sufficient to say that inasmuch as the challenge of the two prospective jurors for cause was not for a legal or sufficient cause the judge was right in overruling the challenge. But the fact that the defendant then had twelve peremptory challenges left, and the fact that he did not complain afterwards of having to accept an objectionable juror, had nothing whatever to do with the judge’s reason or reasons for overruling the challenge of the two prospective jurors for cause.”
 

 The next case cited in the majority opinion in this case is State v. Henry, 197 La. 999, loc. cit. 1019, 3 So.2d 104, loe. cit. Ill, where it is said that the defendant “was compelled to accept objectionable jurors after her peremptory challenges were exhausted”. That statement would destroy the effect of the decision in the Henry case as authority for my interpretation of Article 353 of the Code of Criminal Procedure,' were it not for the fact that the quoted statement in the Henry case is followed immediately by the declaration that the “established rule” is the rule given in State v. McCoy and in State v. Guillory. If we had believed that this “established rule” was abolished by Article 353 of the Code of Criminal Procedure, we would have said so in the Henry case. It is certain, therefore, that the decision in the Henry case is not authority for the majority opinion in the present case.
 

 The next and last case cited in the majority opinion on this subject is the case of State v. Crawford, 195 La. 428, 196 So. 921. The issue in that case had no reference whatever to Article 353 of the Code of Criminal Procedure, or to the jurisprudence on the subject which we are considering now. In fact, Article 353 of the Code of Criminal Procedure is not mentioned in the opinion in that case, nor is any one of the decisions that are cited in the present case. The error complained of in the Crawford case was not — as it is in the present case — that the judge overruled a challenge for cause which he should have sustained. The complaint was that, on account of an error of the district attorney, a jury of five members was impaneled in a case which was triable by a
 
 *510
 
 jury of twelve; and after the error was discovered the judge allowed the jury to he completed hy the impaneling of seven more jurors. The defendant asked the judge to enter a mistrial, or to begin the impaneling of the jury anew, and to return to the defendant the six peremptory challenges which he had used in the impaneling of the jury of five. He contended that his liberty had been put in jeopardy; which of course was not the case, because a jury of five did not have jurisdiction to decide the case of cattle stealing. The important fact in that case was that the defendant was not compelled by the ruling of the judge to waste a peremptory challenge on a disqualified or incompetent juror. Besides, the error of impaneling a jury of only five members — which error was promptly corrected — was attributable as much to the defendant’s attorney’s fault as to the district attorney’s error. The quotation from the opinion in the Crawford case, in the majority opinion in the present case, has nothing to do with the interpretation of Article 353 of the Code of Criminal Procedure.
 

 It is said on the 5th page of the majority opinion in this case [7 So.2d 224
 
 [1]
 
 ] that the judge says in his per curiam that after the defendant exhausted his twelve peremptory challenges he accepted every juror without any complaint or objection whatsoever. The judge, evidently, overlooked the fact which is recorded in the minutes of the court that the State and the defendant each challenged twelve jurors peremptorily in the impaneling of the jury. That fact is not disputed. The judge states in his per curiam that the bill of exception did not show that the defendant exhausted his peremptory challenges and that in consequence of the overruling of the defendant’s challenge of the juror, Hogan, for cause the defendant was compelled to accept an obnoxious juror. The judge adds that the attorney for the defendant “willingly and without any objection or protest whatever accepted every juror who served as such in the case.” That statement should be taken altogether, and in connection with the omission of the judge to observe that the defendant did exhaust his peremptory challenges in the impaneling of the jury. Thereafter, there was no reason why the attorney for the defendant should continue to object or protest, or to ask for a thirteenth peremptory challenge, or to challenge an obnoxious juror for cause if in fact there was no legal cause for which the defendant could challenge successfully an obnoxious juror. What the judge failed to observe in writing his per curiam on this bill of exception was that by his erroneous ruling on the defendant’s challenge of the juror, Hogan, for cause, the judge deprived the defendant unjustly of one of the twelve peremptory challenges which he was entitled to by law — in violation of a provision in the Bill of Rights.
 

 It is said on the 14th page of the majority opinion in this case [7 So.2d
 
 227
 

 [2]
 

 ]
 
 that the phrase with which Article 353 of the Code of Criminal Procedure terminates — “or unless the defendant by such
 
 *511
 
 ruling is forced to accept an obnoxious juror” — will be eliminated and have no legal effect, if the court interprets the article as the attorney for the defendant interprets it. It is said on that page of the majority opinion that the words “such ruling”, in the last line of the article, certainly refer back to the phrase in the beginning of the first sentence in the article, “any ruling sustaining or refusing to sustain a challenge for cause”. It is said that all of this is made clear by the fact that the erroneous allowance of a challenge for cause by the State could not under any circumstances “compel the defendant to accept an obnoxious juror”. In the majority opinion there is no attempt to show —and in fact it is utterly impossible to conceive — how the phrase in the second sentence in this article, “unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law”, could “refer back” to the phrase in the beginning of the first sentence, “any ruling * * * refusing to sustain a challenge for cause”. The truth is — according to the rules of grammatical construction — that neither of these phrases, “unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling is .forced to accept an obnoxious juror”, is applicable to an erroneous overruling of a challenge by the defendant for cause. Erroneous rulings of that kind are dealt with in the first sentence but not in the second sentence of the article. The erroneous allowance of challenges by the State for cause is dealt with in both sentences; that is, the erroneous allowance of challenges for cause affords the defendant no ground of complaint unless his peremptory challenges shall have been exhausted before the completion of the jury panel, and, moreover, unless the effect of such ruling is the exercise by the prosecution, of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling is forced to accept an obnoxious juror. The only condition that is required to preserve the right of the defendant to complain of the erroneous overruling of a challenge for cause is that his “peremptory challenges shall have been exhausted before the completion of the panel”.
 

 Now, let us see if the statement on the 14th page of the majority opinion [7 So.2d 227
 
 [3]
 
 ] — that under no circumstances can the erroneous allowance of a challenge of a prospective juror by the State for cause force the defendant to accept an obnoxious juror — is a correct statement. If, after the State and the defendant both have exhausted their peremptory challenges, the judge erroneously sustains a challenge by the State of the twelfth juror (who is in truth qualified and competent to serve on the jury, and who is not obnoxious to the defendant), and if the next juror who is called in place of the one whom the State has successfully challenged for cause is also qualified and competent to serve on the jury, and is accepted by the State, but is obnoxious to-the defendant, the defendant will be forced
 
 *512
 
 then — by the erroneous ruling allowing the State’s challenge of the other juror for cause — to accept the obnoxious juror. In that case the obnoxious juror would not have been drawn, and the jury panel would have been completed without him, if the judge had not committed the error of sustaining the State’s challenge of the other juror for cause. The likelihood of a defendant’s being compelled, by an erroneous allowance of a challenge by the State for cause, to accept an obnoxious juror, was recognized in the case of State v. Aarons, 43 La.Ann. 406, 9 So. 114, where the court said:
 

 “The ruling of a trial judge in rejecting jurors for cause under challenge by the state affords no legal grounds for complaint on the part of the accused, unless, after the .exhaustion of his peremptory challenges, an obnoxious juror has been selected to try him.”
 

 T-hat decision was quoted with approval in State v. Harris, 107 La. 196, 31 So. 646, where the court again recognized that the erroneous sustaining of a challenge of a prospective juror by the , State for cause could have the effect of forcing the defendant to accept an obnoxious juror. The court said:
 

 “Where a juror is challenged for cause by the state, and the challenge is sustained over the objection of the accused, the latter has no legal ground of complaint, where his bill of exceptions does not show he had exhausted, or did exhaust before the jury was made up, his peremptory challenges, and, in consequence, he had been compelled, later, by reason of the earlier action of the court in sustaining the objection of the state to the juror in question, to accept an obnoxious juror.”
 

 It is easy to see also how the erroneous allowance of a challenge by the State for cause can have the effect of allowing the prosecution to exercise more peremptory challenges than it is entitled to by law. This is important because these two requirements are in the same sentence, viz.: “unless the. effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling is forced to accept an ■ obnoxious juror”. Both of these requirements refer only to the erroneous allowance of a challenge by the State for cause; neither of them refers to the erroneous overruling of a challenge by the defendant for cause. Here is the illustration which the law books furnish, to show how the erroneous allowance of a challenge by the State for cause can have the effect of allowing the prosecution to exercise more peremptory challenges than it is entitled to by law: If the judge erroneously sustains a challenge or more than one challenge by the State for cause, and if, when the impaneling of the jury is completed, the State has exhausted its peremptory challenges or has less peremptory challenges remaining than there were erroneous rulings ■ sustaining challenges by 'the State for cause, the effect of the erroneous ruling or rulings is to allow the prosecution more peremptory challenges than it was entitled to by law. It was so
 
 *513
 
 recognized in State v. Jackson, 42 La.Ann. 1170, 1171, 8 So. 297, thus:
 

 “If the [state’s] challenge for cause had been overruled, the state might still have challenged him peremptorily; and nothing on the bill, or in the record, suggests that the state had exhausted, or ever did exhaust, her peremptory challenges.”
 

 It is said on the 15th page of the majority opinion [7 So.2d 227
 
 [4]
 
 ] that Article 353 of the Code of Criminal Procedure requires that, after the judge has erroneously overruled a challenge of a juror by the defendant for cause, and the defendant has exhausted his peremptory challenges, he must challenge another juror, “so as to have in the record evidence that the defendant was compelled or forced to accept an obnoxious juror”. There is no such requirement in Article 353 of the Code of Criminal Procedure. When the judge, by erroneously overruling the defendant’s challenge of a juror for cause, deprives him unjustly of one of the twelve peremptory challenges which the law allows him, the judge denies him a right which is guaranteed to him in the Bill of Rights. According to Article 557 of the Code, of Criminal Procedure, one of the grounds for which an appellate court must set aside a conviction and grant a new trial is “that the error complained of * * * constitutes a substantial violation of a constitutional or statutory right”. In such a case, therefore, there is no reason why the defendant should go through the futile ceremony of asking the judge to allow him to exercise another — or thirteenth —peremptory challenge. A peremptory challenge is the only kind of .challenge that the defendant could use for the purpose of getting rid of an obnoxious juror, because, if the so-called obnoxious juror should be also a disqualified or incompetent juror, the defendant could challenge him successfully for cause. The word “obnoxious” means “objectionable”, but it is not a synonym for “disqualified” or “incompetent”. See Webster’s New International Dictionary, verbo “obnoxious”. In State v. Fourchy, 51 La.Ann. 228, loc. cit. 248, 25 So. 109, loc.cit. 117, it was said: “The jury sitting upon the trial may be ‘legal’ jurors by the application of legal tests, and yet very obnoxious jurors for secret and undisclosed reasons”. That decision is cited in 29 Words and Phrases, Permanent Edition, p. 67, thus:
 

 “ ‘Obnoxious,’ as used with reference to a juror, does not refer necessarily to legal incompetency or unfitness, since a juror may be ‘legal’ by the application of legal tests, and yet ‘obnoxious’ to one or the other of the parties.”
 

 If, in the discussion of this subject on the 15th page of the majority opinion [7 So.2d 227
 
 [5]
 
 ], it is meant that the defendant must challenge the obnoxious juror for cause — in order for the defendant to have the right to complain of the erroneous overruling of his previous challenge of a juror for cause — the challenging of the obnoxious 'juror for cause would be of no avail if the cause is not a valid or sufficient cause; and, if the cause for which
 
 *514
 
 the defendant challenges the obnoxious juror is a valid and sufficient cause, the judge’s overruling of the challenge of the obnoxious juror will, of itself, furnish the defendant a good hill of exception, without reference to the judge’s original error of overruling the defendant’s challenge of the disqualified juror for cause.
 

 This case will be a sad example of the practical effect of the interpretation which the court is giving to Article 353 of the Code of Criminal Procedure. The defendant stands condemned to spend the remaining years of his life in the penitentiary, notwithstanding it is conceded that he would be entitled to a new trial if his attorney had only thought of challenging a qualified juror after the defendant’s peremptory challenges were exhausted, even though it is conceded also that if the additional challenge had
 
 been
 
 made the judge would have been obliged to overrule it.
 

 [2]
 

 199 La. 984.
 

 [3]
 

 199 La. 984.
 

 [4]
 

 199 La. 986.
 

 [5]
 

 199 La. 984.